UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT,

    Plaintiff,

    v.

UNIVERSITY HALL CONDOMINIUM
OWNERS ASSOCIATION, et al.,

    Defendants.

Civil No. 18-2551 (JDB)

## MEMORANDUM OPINION

Plaintiff Travelers Indemnity Company of Connecticut filed this action seeking declaratory relief against defendants University Hall Condominium Owners Association, James Buckley, and Tilton Bernstein Management Company (collectively, "University Hall"). Specifically, Travelers seeks an order from the Court declaring that Travelers has no duty to defend University Hall for the claims asserted against it in a lawsuit being adjudicated in D.C. Superior Court. Travelers has now filed a motion for summary judgment. The Court concludes that Travelers does not owe a duty to defend under the terms of the insurance policy issued to University Hall and will grant the motion for summary judgment.

### Background

This declaratory judgment action arises from a lawsuit filed by Hazel Bland Thomas in D.C. Superior Court on October 4, 2013 ("Thomas Suit"). Exhibit A ("Thomas Compl."), Pl. Travelers Indem. Co. of Connecticut's Mem. in Supp. of Its Mot. for Summ. J. ("Travelers Mot.") [ECF No. 29-1]. In that underlying lawsuit, which was still pending at the time of briefing, Thomas alleged that in 2011 and 2012 University Hall and James Buckley intentionally and wrongfully

1

foreclosed on her condominium in a scheme to allow Buckley to "purchase the Property for a significant reduction in the purchase price." Thomas Compl. ¶¶ 18–39. Thomas alleged that they effected this scheme by filing a Notice of Condominium Lien for Assessments Due and a Notice of Foreclosure Sale without informing her, then moving ahead with a foreclosure sale at which Buckley purchased the condominium, all without her knowledge. Id. ¶¶ 18–34.

Thomas's complaint asserts seven counts: (1) breach of contract and request for accounting; (2) slander of title; (3) breach of fiduciary duty; (4) unjust enrichment; (5) abuse of process; (6) remove cloud on title; and (7) equitable action to rescind sale. Id. ¶¶ 35–70. The second count, for slander of title, was dismissed with prejudice on January 23, 2014. Exhibit B, Travelers Mot. at 1–2.

At the time of the conduct alleged in Thomas's complaint, University Hall Condominium Owners Association was the named insured on an insurance policy ("Policy") issued by Travelers on June 14, 2011. Exhibit C ("Policy"), Travelers Mot. at 2. As relevant here, the Policy provides two types of coverage: Coverage A—Bodily Injury and Property Damage Liability Coverage; and Coverage B—Personal Injury, Advertising Injury, and Web Site Injury Liability Coverage. Policy, Form CG 00 01 10 01, at 1, 5.

With respect to Coverage A, the Policy states:

a. We [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory[.]"

Id. at 1. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 14. The Policy also contains, applicable to Coverage A, an Expected or Intended Injury or Damage exclusion, which provides that the Travelers insurance does not apply to "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured." Policy, Form CG D1 86 11 03, at 5.

With respect to Coverage B, the Policy states:

> We [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury", "advertising injury" or "web site injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury", "advertising injury", or "web site injury" to which this insurance does not apply.

Policy, Form CG D2 34 01 05, at 1. The Policy goes on to define "personal injury" as follows:

> "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
>
>   a. False arrest, detention, or imprisonment;
>   b. Malicious prosecution;
>   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;
>   d. Oral, written or electronic publication of materials that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or
>   e. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life.

Id. at 4.

Travelers has been defending University Hall in the Thomas Suit under the Policy, subject to a reservation of rights. Travelers Mot. at 4. On November 5, 2018, Travelers filed this action

3

seeking a declaration that University Hall is not "entitled to coverage with respect to the Thomas Lawsuit under the Travelers Policy." Compl. [ECF No. 1] ¶ 28. Travelers has now filed a motion for summary judgment, briefing is complete, and the motion is ripe for decision.

## Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate when the pleadings and the record demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Santos v. DEA, 357 F. Supp. 2d 33, 35–36 (D.D.C. 2004) (internal quotation marks omitted). The moving party bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant makes that showing, the burden shifts to the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). The Court reviews the evidence "in the light most favorable to the party opposing summary judgment." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Discussion

With respect to insurance coverage disputes like this one, D.C. courts follow the so-called "eight-corners rule."[1] See Stevens v. United Gen. Title Ins. Co., 801 A.2d 61, 66 n.4 (D.C. 2002). Under that approach, "an insurer's duty to defend is determined by comparing the complaint . . . with the policy. If the facts alleged in the complaint . . . would give rise to liability under the

---

[1] The parties agree that D.C. law applies here. See Travelers Mot. at 7–8; Def. Univ. Hall Condo. Owners Ass'n's Opp'n to Pl.'s Mot. for Summ. J. ("Univ. Hall Opp'n") [ECF No. 39] at 3; Hazel B. Thomas' Opp'n to Travelers Indem. Co. of Conn. Mot. for Summ. J. ("Thomas Opp'n") [ECF No. 40] at 7–8.

4

policy if proven, the insurer must defend the insured." Id. "As a general principle, the focus 'must always be on the allegations of the complaint.'" Am. Cont'l Ins. Co. v. Pooya, 666 A.2d 1193, 1998 (D.C. 1995) (quoting Washington v. State Farm Fire & Cas. Co., 629 A.2d 24, 26 n.5 (D.C. 1993)); see Stevens, 801 A.2d at 67 ("The obligation to defend is not affected by facts ascertained before suit or developed in the process of litigation[,] or by the ultimate outcome of the suit." (internal quotation marks omitted)). Consequently, courts must "examine the complaint for all plausible claims encompassed within the complaint" in order "to ascertain whether the allegations of the complaint state a cause of action within the policy coverage." Pooya, 666 A.2d at 1197. If the complaint's allegations state a claim covered by the policy, "the insurance company must defend." Id. at 1198.

The question for the Court here, then, is whether the complaint filed in the Thomas Suit alleges a cause of action within either Coverage A or Coverage B of the Policy.

## I. Coverage A

For University Hall to be covered for the Thomas Suit under Coverage A, the Thomas complaint must allege "bodily injury" or "property damage" caused by an "occurrence." Policy, CG 00 01 10 01, at 1. An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 14 (emphasis added). Travelers argues that whether the Thomas complaint is looked at as a whole or in count-by-count fashion, it alleges only intentional conduct—not accidents. See Travelers Mot. at 9–10. The Court agrees.

Though the Policy does not define "accident," D.C. courts have concluded that insurance policies that cover "accidents" or "occurrences" do not cover injuries that "were a natural or a probable result of the insured's actions reasonably foreseeable by him or a reasonably prudent man in his position." Byrd v. Nationwide Mut. Ins. Co., 415 A.2d 807, 809 (D.C. 1980); see Travelers

5

Indem. Co. v. Walburn, 378 F. Supp. 860, 865–67 (D.D.C. 1974) (concluding that insured was not entitled to "accident" coverage in wrongful death action where he had previously been convicted of second-degree murder for the same conduct because the jury in the murder trial "must necessarily have found" that he "intended to do serious bodily injury" in order to convict, and thus his conduct was not an accident). Similarly, Black's Law Dictionary defines "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Accident, Black's Law Dictionary (11th ed. 2019).

Here, the Thomas complaint is explicit that it is alleging intentional conduct, rather than anything unintentional or unforeseeable. Indeed, each count highlights the deliberate nature of the conduct alleged. See Thomas Compl. ¶¶ 39 (Count I: University Hall "sought a non-judicial foreclosure sale with the deliberate intention of concealing the foreclosure sale from Plaintiff"); 47 (Count II: "Defendants caused the [Foreclosure] documents to be recorded in the public record, with knowledge that the filing was unjustified"); 54 (Count III: Defendants breached their "duty as a fiduciary by preparing false and fraudulent notices and filing them"); 58 (Count IV: Defendants made "efforts to conceal the Foreclosure Sale from Plaintiff to unjustly enrich [themselves]"); 60 (Count V: "Defendants maliciously misused and/or abused process for an improper purpose"); 62 (Count VI: alleging no claim-specific conduct other than repeating "each and every allegation contained in paragraphs above," including all allegations of intentional conduct, and stating that the Foreclosure Deed filed by defendants "contain[ed] false statements"); 70 (Count VII: "Default was fabricated by the Defendants").

In short, the complaint outlines a deliberate scheme whereby University Hall deprived Thomas of her condominium through malicious and improper means. And the injuries that

6

Thomas asserts, such as that she has been deprived of the quiet enjoyment of her property, had an interruption in her possession of the property, and has incurred legal fees, see Thomas Compl. ¶ 55, were all reasonably foreseeable results—in fact, the intended results—of the conduct alleged in her complaint. See Byrd, 415 A.2d at 809. University Hall's only argument in response is that the Court should not "simply look to the literal wording of the complaint" but should instead look to "all plausible claims encompassed within the complaint." Univ. Hall Opp'n at 5. But even giving the Thomas complaint a very generous reading, the Court can find therein no allegations of anything even remotely close to an accident. As a result, the Court concludes that the Thomas complaint does not allege an "occurrence" as defined in the Policy, and Travelers owes University Hall no duty to defend under Coverage A.

## II. Coverage B

For University Hall to be covered for the Thomas Suit under Coverage B, the Thomas complaint must allege a "personal injury" arising out of one of the enumerated offenses in the Policy.[2] Travelers argues that the complaint does not allege any of these enumerated offenses and thus no coverage is owed. See Travelers Mot. at 11. University Hall retorts that while the Thomas complaint did not allege a claim of malicious prosecution, the Policy's enumerated offense of "malicious prosecution" should encompass her claim of abuse of process, because malicious prosecution claims and abuse of process claims are similar and "overlap in . . . meaning and

---

[2] In her opposition to Travelers's motion for summary judgment, Thomas argues that there should also be coverage under the "advertising injury" language of Coverage B, based on her "slander of title" claim in the Thomas Suit. Thomas Opp'n at 7. However, even setting aside that that claim was dismissed with prejudice by the D.C. Superior Court in 2014, see Exhibit B, Travelers Mot. at 1–2, the Policy defines "advertising injury" as applying only when material has been published that "slanders or libels a person or organization," Policy, Form CG D2 34 01 05, at 4 (emphasis added). Thomas's slander of title claim alleges that the "title to the subject Property" was disparaged—not a "person or organization." Thomas Compl. ¶ 46. Courts considering this issue have been "unanimous in holding that slander of title claims pertain only to real property, which is not a person [or an] organization." Nationwide Mut. Ins. Co. v. Lake Caroline, Inc., 515 F.3d 414, 420 (5th Cir. 2008). Hence, Travelers owes no duty to defend under Coverage B for the slander of title claim.

7

purpose." Univ. Hall Opp'n at 7–8. The Court again agrees with Travelers, because University Hall's argument runs headlong into both the plain language of the Policy and the reasoning of a majority of courts to have addressed the issue.

As to plain language, under D.C. law, where "insurance contract language is not ambiguous . . . a written contract duly signed and executed speaks for itself and binds the parties." Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union, 770 A.2d 978, 986 (D.C. 2001). Here, the Policy contains a limited list of enumerated offenses that constitute a "personal injury." Included on that list is the offense of "malicious prosecution"; absent from the list is the offense of "abuse of process." Policy, Form CG D2 34 01 05, at 4. Under D.C. law, the two causes of action are distinct and are not simply interchangeable (as University Hall seems to argue). See Bown v. Hamilton, 601 A.2d 1074, 1079 n.14 (D.C. 1992) (noting that (1) "[a]buse of process . . . stands in marked contrast to the tort of malicious prosecution," and (2) "[t]o allow the use of abuse of process in" a situation where "recovery would appear best determined within the limits of malicious prosecution" would "seem to significantly blur the conceptual distinction between the two torts"). Given this clear distinction between the causes of action, the Policy's use of the term "malicious prosecution" is unambiguous and cannot be read to include abuse of process claims. The fact that the Policy enumerates one of these distinct torts demonstrates a clear intent to exclude the other. Cf. Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 373 n.2 (D. Mass. 2015) ("The express inclusion of the related, though distinct, tort of malicious prosecution in the [insurance policy], without a parallel inclusion of abuse of process, is corroborative of a contractual determination not to cover abuse of process claims.").

This reading of the Policy is bolstered by the conclusion of a majority of other courts to have considered the issue. Those courts have almost all determined that abuse of process claims

8

are not covered under insurance policies that cover only malicious prosecution claims. See, e.g., Parker Supply Co., Inc. v. Travelers Indem. Co., 588 F.2d 180, 182–83 (5th Cir. 1979) ("Since the differences between actions for malicious prosecution, abuse of process, and wrongful attachment or garnishment are recognized in Alabama, the policies' reference to the offense of 'malicious prosecution' was not ambiguous and only a suit . . . for that offense would have created an obligation for the insurers to defend and indemnify." (internal citations omitted)); Bull v. Federated Mut. Ins. Co., 338 F. Supp. 3d 958, 966–67 & n.3 (E.D. Ark. 2018) (similar); Secura Ins. Co. v. Gorsick, 2008 WL 341383, at *8 n.1 (W.D. Ky. Feb. 6, 2008) (similar); Heil Co. v. Hartford Accident & Indem. Co., 937 F. Supp. 1355, 1362–63 (E.D. Wis. 1996) (similar). The only case that University Hall can rely on for the opposite position is Lunsford v. Am. Guarantee & Liab. Ins. Co., 18 F.3d 653 (9th Cir. 1994), which stated that under California law, "the distinction between malicious prosecution and abuse of process is at best unclear," and thus concluded that "given the overlap between malicious prosecution and abuse of process," insurance covering one claim should likewise cover the other, id. at 655–56 (internal quotation marks omitted).[3] However, Lunsford's conclusion was based upon ambiguities in California law; in contrast, and as explained above, D.C. law draws a clear distinction between the two torts. Cf. Heil Co., 937 F. Supp. at 1363 ("Quite simply, under Wisconsin law, there is a difference between malicious prosecution and abuse of process."). Moreover, "Lunsford appears to state a minority position, and the majority of courts have reached the opposite conclusion." Hinkle v. State Farm Fire & Cas. Co., 308 P.3d 1009, 1015 (N.M. Ct. App. 2013). In these circumstances, the Court will side with the majority view.

---

[3] University Hall also cites Koehring Co. v. Am. Mut. Liab. Ins. Co., 564 F. Supp. 303 (E.D. Wis. 1983) as support, but a later case from the Eastern District of Wisconsin makes clear that Koehring was wrongly decided because "recent Wisconsin Supreme Court and appellate court decisions have implicitly rejected the rationale utilized in Koehring," see Heil Co., 937 F. Supp. 3d at 1363 n.4.

9

Finally, the Court rejects the argument that Travelers owes a duty to defend because she can "still seek to have the Superior Court consider a malicious prosecution charge to be provided to the jury at trial" or could seek to amend her complaint in the underlying suit. See Thomas Opp'n at 5–7. D.C. law is clear that under the eight-corners rule, all that matters is what is contained in the operative complaint and the policy: the duty to defend "is not affected by facts ascertained before suit or developed in the process of litigation[,] or by the ultimate outcome of the suit." Stevens, 801 A.2d at 67 (quotation omitted). The operative complaint here does not contain a claim of malicious prosecution. Moreover, her argument that she could still amend her complaint at this late date is unavailing, as the underlying litigation has been resolved and closed, at least as to the merits of Thomas's claims.[4]

Based upon the plain language of the Policy and in keeping with the majority of courts to have addressed the issue, the Court thus concludes that "malicious prosecution" in the Policy does not include "abuse of process" claims. Hence, Travelers owes University Hall no duty to defend under Coverage B.

## **Conclusion**

For the foregoing reasons, the Court will grant Travelers's motion for summary judgment. A separate order has been issued on this date.

---

[4] On March 16, 2020, the Court issued an order requiring the parties to file a joint statement explaining the status of any underlying D.C. litigation and to explain why, if that litigation was completed, this case is not moot. See Minute Order of March 16, 2020. Two of the parties—University Hall and Travelers—complied with the Court's order and filed a joint statement, in which Thomas declined to join. See Joint Statement Regarding Status of Underlying Proceedings ¶ 1 [ECF No. 64]. The joint statement reports that the D.C. Superior Court has closed the underlying D.C. litigation on the merits, and the D.C. Court of Appeals has declined to allow any appeal as to the merits. Id. ¶¶ 2, 8. The only remaining issue in the underlying litigation is an appeal by Thomas of the D.C. Superior Court's decision on her motion for attorney's fees, which is currently pending before the D.C. Court of Appeals. Id. ¶¶ 8–9. The parties argue that the case remains live because "Travelers continues to defend [University Hall] against the underlying proceedings under the insurance policy at issue in this case," and moreover "may be liable for the amounts awarded against University Hall." Id. ¶ 10. The Court agrees that the parties continue to have "legally cognizable interest[s] in the outcome" of this case sufficient to render the case an "actual, ongoing controvers[y]" and, therefore, not moot. Porzecanski v. Azar, 943 F.3d 472, 478–79 (D.C. Cir. 2019).

/s/
JOHN D. BATES
United States District Judge

Dated: March 30, 2020